# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 08-504V
(To be Published)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

ROBERT VERNACCHIO *and* ERICA VERNACCHIO, *parents and natural guardians of* L.V., *a minor*,

        Petitioners,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES,

        Respondent.

Filed: March 6, 2015

Motion for Judicial Estoppel;
Influenza ("Flu") Vaccine; Omnibus Autism Proceeding ("OAP");
Regressive Encephalopathy;
Collateral Estoppel

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*Robert Joel Krakow*, Law Office of Robert J. Krakow, P.C., New York, NY, for Petitioners.

*Lynn Ricciardella*, U.S. Dep't of Justice, Washington, DC, for Respondent.

## ORDER DENYING PETITIONERS' MOTION FOR JUDICIAL ESTOPPEL[1]

    Petitioners Robert and Erica Vernacchio, as the parents and natural guardians of L.V., a minor, seek to establish that the influenza ("flu") vaccine that L.V. received on December 8, 2006, exacerbated a regressive encephalopathy resulting in certain physiological symptoms and developmental regression. Since initiation of the case almost seven years ago, medical records, expert reports, and supporting literature have been filed in anticipation of an entitlement hearing to be held in April of 2015.

    The Vernacchios recently filed a motion to estop Respondent from taking a factual position in defending against their claim that is contrary to the position Petitioners allege was

---

[1] Because this order contains a reasoned explanation for my action in this case, I will post it on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2006)). As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the Parties may object to the order's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen (14) days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the entire order will be available to the public. *Id.*

adopted by Respondent in a different Vaccine Program[2] case, *Poling v. Sec'y of Health & Human Servs.*, No. 02-1466V, 2008 WL 1883059 (Fed. Cl. Spec. Mstr. Apr. 10, 2008) [hereinafter *Poling*]. After review of the Parties' briefs and arguments, I deny Petitioners' motion.

### I.  Factual Background and Procedural History

L.V. was born on March 15, 2005. Pet'rs' Ex. 1. Up until and through his eighteen-month check up on September 8, 2006, doctors found L.V. to be developmentally appropriate for his age. Pet'rs' Ex. 3 at 98. On December 8, 2006, L.V. received a trivalent flu vaccination. *Id.* at 128-31. By December 13, 2006, L.V. was observed to be experiencing speech delay. *Id.* at 134-37.[3] Concerned with L.V.'s developmental progress, Mrs. Vernacchio thereafter took L.V. to see a doctor in January of 2007 for an evaluation. Pet'rs' Ex. 5. After referral to a child neurologist and developmental pediatrician, doctors diagnosed L.V.'s behavior as indicative of autism. *Id.* at 4. Petitioners argue in this case that the flu vaccine L.V. received caused a significant aggravation of a pre-existing mitochondrial disorder (unknown at the time of vaccination) that caused a regressive encephalopathy, resulting in subsequently-observed developmental regression associated with physiological symptoms. Pet'rs' Amended Pet. at 32-33 (ECF No. 27).

The Vernacchios originally filed this petition on July 11, 2008. At that time, the case was among the thousands of similar claims involving alleged autism or autism spectrum disorder injuries, and therefore fell within the Omnibus Autism Proceeding ("OAP").[4] However, after the relevant test cases[5] in the OAP were litigated, resulting in decisions finding that the evidence

---

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 codified as amended at 42 U.S.C. §§ 300aa-10- 300aa-34. All citations in this decision to individual sections of the Vaccine Act are to 42 U.S.C. § 300aa.

[3] The Parties dispute when the Vernacchios actually first became aware of L.V.'s developmental problems, but for purposes of this summarized factual/procedural recital I only reference the Petitioners' allegations.

[4] The OAP was designed and intended to help address the multitude of vaccine cases filed with the Court of Federal Claims alleging autism as the vaccine-related injury. *In Re: Claims for Vaccine Injuries resulting in Autism Spectrum Disorder or a Similar Neurodevelopmental Disorder*, Office of Special Masters, (3 July 2002) *available at* http://www.uscfc.uscourts.gov/sites/default/files/autism/Autism+General+Order1.pdf. The Office of Special Masters was tasked with inquiring into general causation issues involved in representative test cases chosen by the Petitioners' Steering Committee (an organization formed by the attorneys who represented OAP petitioners), and then "the *conclusions reached* in that general inquiry will be applied to the individual cases." *Id.* (emphasis added). If the ruling in a test case regarding general causation appeared to favor an individual petitioner's case within the OAP, then the petitioner would be ordered to show that the facts of his case met such circumstances. *Id.* Petitioners' Bar agreed to the structure of the OAP and put forth a multitude of evidence and experts, with the understanding that they could then choose to use the OAP's findings as desired. The Petitioners' Bar also determined the membership of the Petitioners' Steering Committee.

[5] The Petitioners' Steering Committee litigated six test cases that presented two different autism and autism spectrum disorder theories. Three designated test cases were selected to advance "Theory 1," which was that the measles component of the measles-mumps-rubella ("MMR") vaccine and thimerosal-containing vaccines can cause

was insufficient that the MMR vaccine or thimerosal-containing vaccines could cause autism, the Vernacchios elected to remain in the Program, filing an amended petition on April 9, 2012, that explained how their revised theory of vaccine causation differed from the decided test cases. ECF No. 27.

The Petitioners filed an expert report on August 20, 2013 (ECF No. 64), and then Respondent filed her Rule 4(c) report along with a responsive expert report on February 19, 2014, arguing that the record failed to establish by preponderant evidence a causal connection between receipt of the flu vaccination and L.V.'s subsequent conditions, and disputing the reliability of Petitioners' medical theory. ECF No. 71. The Vernacchios then elected to file a supplemental expert report. ECF No. 95. With records gathering and the filing of other relevant evidence complete, a two-day entitlement hearing has been set for April of 2015.

The present Motion for Judicial Estoppel was filed on January 5, 2015. ECF No. 112. In it, the Vernacchios request that Respondent be estopped from litigating aspects of Petitioners' causation theory herein in light of the *Poling* case.[6] Petitioners specifically argue that in the course of the *Poling* case, Respondent conceded and acknowledged (in her Rule 4(c) report, filed prior to the case's resolution) the evidentiary sufficiency of the medical theory that a vaccine *can* exacerbate a pre-existing mitochondrial disorder, and therefore Respondent should be estopped from relitigating that same theory herein.[7] As the legal basis for their motion, Petitioners invoke fairness, equity, and the integrity of the judicial system, as well as the Supreme Court's decisions in *Pegram v. Herdrich*, 530 U.S. 211 (2000) and *New Hampshire v. Maine*, 532 U.S. 742 (2001).

---

some autism spectrum disorders: (1) *Cedillo v. Sec'y of Health & Human Servs.*, No. 98-916V, 2009 WL 331968 (Fed. Cl. Spec. Mstr. Feb. 12, 2009), *mot. for rev. den'd*, 89 Fed. Cl. 158 (2009) *aff'd*, 617 F.3d 1328 (Fed. Cir. 2010); (2) *Hazlehurst v. Sec'y of Health & Human Servs.*, No. 03-654V, 2009 WL 332306 (Fed. Cl. Spec. Mstr. Feb. 12, 2009), *mot. for rev. den'd*, 88 Fed. Cl. 473 (2009), *aff'd*, 604 F.3d 1343 (Fed. Cir. 2010); and (3) *Snyder v. Sec'y of Health & Human Servs.*, No. 01-162V, 2009 WL 332044 (Fed. Cl. Spec. Mstr. Feb. 12, 2009), *mot. for reconsid. den'd*, 2009 WL 764611 (Fed. Cl. Spec. Mstr. Mar. 16, 2009), *mot. for rev. den'd*, 88 Fed. Cl. 706 (2009).

[6] The *Poling* petitioners specifically alleged a Table Injury – "a presumptive MMR vaccine-related injury of an encephalopathy . . . [that] eventually manifested as a chronic encephalopathy with features of autism spectrum disorder and a complex partial seizure disorder as a sequel." *Poling v. Sec'y of Health & Human Servs.*, No. 02-1466V, 2011 WL 678559 at *1 (Fed. Cl. Jan. 28, 2011) (deciding reasonable attorney's fees and costs to be awarded to petitioners). During the time the *Poling* case was part of the OAP, however, the theory of the case asserted in *Poling* was that thimerosal-containing vaccinations can cause autism. *Poling*, 2008 WL 1883059 at *1. Respondent elected not to challenge the claim and a decision awarding damages to the Poling petitioners was entered.

[7] Petitioners also assert that this same medical theory is asserted in a different case, *Paluck v. Sec'y of Health & Human Servs.*, 104 Fed. Cl. 457 (2012). Pet'rs' Mot. at 8. The petitioners in *Paluck* asserted that their son's severe neurological damage was caused or alternatively significantly aggravated by his MMR, varicella, and Prevnar vaccinations. *Id*. Although the special master responsible for the matter initially denied entitlement, that decision was vacated and remanded by the Court of Federal Claims. *Id*. After the special master again denied entitlement, the decision was reviewed a second time and reversed. *Paluck v. Sec'y of Health & Human Servs.*, 113 Fed. Cl. 210 (2013). The case is currently on appeal to the Federal Circuit. The Vernacchios argue herein that the outcome of *Paluck* (and in particular, the embracing of the theory asserted therein as sufficient to meet the preponderant evidence standard) is similarly binding on Respondent. Pet'rs' Mot. at 8.

3

Respondent opposed the Vernacchios' Motion on January 15, 2015 (ECF No. 115), arguing that as a matter of law, the doctrine of collateral estoppel cannot be asserted against the Respondent (a United States governmental entity) in Vaccine Program claims, given the policy reasons for limiting application of the doctrine set forth in a different Supreme Court case, *United States v. Mendoza*, 464 U.S. 154 (1984). Respondent also asserts that she has never conceded (in *Poling* or otherwise) that any vaccine can cause significant aggravation of a pre-existing mitochondrial disorder, highlighting that vaccine cases are highly fact-specific and have no precedential bearing on subsequent cases. Resp't Resp. ECF No. 115 at 2-3. And Respondent points out factual and procedural differences between *Poling* and the present case, asserting that Respondent's recommendation to compensate in *Poling* as set forth in that case's Rule 4(c) report was unrelated to the validity of a particular causal theory. *Id*. at 2.

The Vernacchios filed a reply in support of their motion on January 28, 2015. ECF No. 117. Their reply asserts that Respondent has misconstrued Petitioners' motion as invoking collateral estoppel, when in fact the motion is based on the related but distinct concept of *judicial* estoppel – although they maintain that their motion could also be granted on the basis of collateral estoppel, since in their view *Mendoza*'s policy reasons for prohibiting collateral estoppel to be asserted against the United States do not apply. *Id*. at 8. Petitioners also attempt to establish a close identity between *Poling* and the present case, based on the fact that both cases were once in the OAP and that *Poling* itself was originally going to be an OAP test case before it settled. *Id*. at 10. In so doing, Petitioners analogize the OAP to a class action suit, referring to *Nevada v. United States*, 463 U.S. 110 (1983) in support of this argument. *Id*. at 6.

Petitioners' Motion for Judicial Estoppel is now ready to be decided.

**II.      Analysis**

A.      <u>Collateral Estoppel is Not Available in Vaccine Program Cases</u>

Petitioners stress that their motion is not primarily based upon the doctrine of non-mutual offensive collateral estoppel (although they do attempt to argue that the relief they seek could be justified on that basis). This version of the estoppel doctrine is the one most commonly asserted in the Vaccine Program – but it is universally rejected as inapplicable against Respondent.

The doctrine of collateral estoppel provides that "a judgment on the merits in the first suit precludes relitigation in a second suit of issues actually litigated and determined in the first suit." *Innovad Inc. v. Microsoft Corp.*, 260 F.3d 1326, 1334 (Fed. Cir. 2001). "Offensive" and non-mutual use of collateral estoppel occurs when an entity or person who was not party to the prior judgment wants to invoke that judgment to prevent a defendant (in this case, Respondent) from relitigating the issues that were resolved against that defendant in the earlier proceeding. *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 (1976). In *Mendoza,* however, the Supreme Court held that non-mutual offensive collateral estoppel cannot be applied against the

federal government. *Mendoza*, 464 U.S. at 160. As the Supreme Court reasoned, the United States is inherently different from a private litigant due to the geographic scope and multiplicity of its litigation. *Id*. Furthermore, government litigation more frequently addresses legal questions of substantial importance, and therefore allowing the United States to be subject to estoppel would "thwart the development of important questions of law." *Id*.

The bar on application of collateral estoppel against the United States includes Vaccine Program cases. Under Section 12(b)(1) of the Act, the Secretary of the Department of Health and Human Services, a federal entity, is officially designated to defend against a petitioner's claim. 42 U.S.C. § 300aa-12(b)(1). Numerous vaccine cases have affirmed the inapplicability of the collateral estoppel doctrine in this context. *See, e.g.*, *Bast v. Sec'y of Health & Human Servs.*, 117 Fed. Cl. 104, 124 n. 18, *appeal dismissed sub nom.*, *M.S.B. ex rel. Bast v. Sec'y of Health & Human Servs.,* 579 F. App'x 1001 (Fed. Cir. 2014); *Stewart v. Sec'y of Health & Human Servs.*, No. 06-777V, 2011 WL 2680580, at *2 (Fed. Cl. Spec. Mstr. June 15, 2011); *Sharkey v. Sec'y of Health & Human Servs.*, No. 99-669V, 2010 WL 5507915, at *1 (Fed. Cl. Spec. Mstr. Dec. 10, 2010).[8]

Petitioners correctly observe that the bar against collaterally estopping the United States is not absolute, but is instead subject to exceptions.[9] They attempt to establish that such circumstances apply here, given that vaccine injury claims arise out of a single statutory framework, are litigated by a single federal entity (in conjunction with a specific Department of Justice component), and are adjudicated in a designated forum. Pet'rs' Reply at 7-8 (ECF No. 117). This, Petitioners argue, mitigates the public policy concerns identified in *Mendoza*, and therefore makes estoppel appropriate herein.

The Vernacchios' argument may accurately describe the contours of Vaccine Program litigation, but it does not invalidate the underlying policy concerns that have led other special masters to find that collateral estoppel is not appropriate in this forum. *Stewart*, 2011 WL 2680580, at *2 (discussing in detail the Supreme Court's reasoning in *Mendoza*). For even if all of the claims asserted under the Act are litigated in a single forum and by the same federal entity, Vaccine Program petitions feature a multitude of fact-specific claims. Even in cases involving the same vaccine or causation theory, the evidentiary circumstances vary widely, making an

---

[8] This is congruent with the parallel, well-accepted precedential concept that the decisions of special masters in other cases (which often involve causation theories similar to those asserted in other pending or subsequent cases) are persuasive but not *binding* authority (as opposed to Federal Circuit decisions). *Guillory v. Sec'y of Health & Human Servs.*, 59 Fed. Cl. 121, 124 (2003), *aff'd*, 104 F. App'x 712 (Fed. Cir. 2004); *Hanlon v. Sec'y of Health & Human Servs.*, 40 Fed. Cl. 625, 630 (1998).

[9] For example, the bar may not apply where the public policy considerations that favor suspension of collateral estoppel are not present. *See, e.g.*, *N.L.R.B. v. Donna-Lee Sportswear Co., Inc.*, 836 F.2d 31 (1st Cir. 1987) (holding that the private interest of the parties predominates so the public policy considerations were not valid). Similarly, the doctrine has been applied against the United States where it was only a nominal party with no demonstrated direct interest in the subject matter of the suit. *Westerchil Const. Co., Inc. v. United States*, 16 Cl. Ct. 727, 732-33 (1989).

outcome favorable to a petitioner appropriate in some cases but not in others. *Rickett v. Sec. of Health & Servs.*, 468 Fed. Appx. 952, 959 (Fed. Cir. 2011) ("[a] special master's acceptance of a theory in one case does not require him or her to accept the theory in subsequent cases involving similar facts or the same vaccine. Rather, a different evidentiary record can lead to different outcomes"). Given the varied nature of Vaccine Program claims, and the ever-evolving medical and scientific evidence that informs their resolution, to avoid "thwart[ing] the development of important questions of law by freezing the first final decision" (*Mendoza*, 464 U.S. at 160), the bar on invocation of collateral estoppel in Vaccine Program cases is appropriately observed, and therefore is not available to Petitioners herein.[10]

B. <u>Petitioners Have Not Established Grounds for Applying Judicial Estoppel Against the Respondent Based on the Circumstances of this Case</u>

Attempting to sidestep the above, the Vernacchios invoke the distinct concept of *judicial* estoppel as the true basis for their motion. This estoppel argument does not appear to have been advanced in any Vaccine Program cases before. But it is equally unavailing.

Under the doctrine of judicial estoppel, "where a party successfully urges a particular position in a legal proceeding, it is estopped from taking a contrary position in a subsequent proceeding where its interests have changed." *Cuyahoga Metropolitan Housing Auth. v. United States*, 65 Fed. Cl. 534, 554 (2005), (quoting *Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1565 (Fed. Cir. 1996)); *see also Davis v. Wakelee*, 156 U.S. 680, 689 (1895); *New Hampshire v. Maine*, 532 U.S. at 751; *Pegram*, 530 U.S. at 211. The Court of Federal Claims has identified three "necessary elements" to be considered when determining whether application of judicial estoppel is appropriate: (1) whether a party's later position is inconsistent with its earlier position; (2) whether a party had successfully persuaded a court to accept the earlier position, such that judicial acceptance of the inconsistent position would suggest that one of the courts had been misled; and (3) whether the party asserting the inconsistent position would be unfairly advantaged (or the other party unfairly prejudiced) unless estopped. *Moreland Corp. v. United States,* 76 Fed. Cl. 268, 294 (2007) (citing *Cuyahoga Metropolitan Housing Auth.*, 65 Fed. Cl. at 554). Ultimately, the doctrine is intended to protect the integrity of the judicial system rather

---

[10] There are no other permutations of collateral estoppel that could favorably be invoked by the Vernacchios. Courts have allowed *mutual* collateral estoppel in cases involving the same parties where the issues in a second action were actually and necessarily adjudicated in the first, and where the government had a full and fair opportunity to litigate the issues. *See, e.g.*, *United States v. Stauffer Chemical Co.*, 464 U.S. 165 (1984); *Yankton Sioux Tribe of Indians v. Nelson*, 604 F. Supp. 1146 (D. S.D. 1985), *rev'd on other grounds*, 796 F.2d 241 (8th Cir. 1986). But the Vernacchios do not have identity with the *Poling* petitioners (as discussed in greater detail below), and they have not successfully established that their former common participation in the OAP alters that conclusion. The Supreme Court has also indicated that nonmutual collateral estoppel may be invoked against the government in cases arising under the Supreme Court's original jurisdiction. *United States v. Alaska*, 521 U.S. 1 (1997); 47 Am. Jur. 2d Judgments § 573. However, the Supreme Court's limited original jurisdiction extends only to a few specific categories – i.e., disputes between states. 28 U.S.C. § 1251. Vaccine cases are not covered by the Supreme Court's limited original jurisdiction.

than the individual parties to a case, and its application is left to a court's discretion. *Data Gen. Corp.*, 78 F.3d at 1565; *Cuyahoga Metropolitan Housing Auth.*, 65 Fed. Cl. at 554.

Petitioners wish to treat the statements contained in Respondent's Rule 4(c) report[11] from *Poling* as a global concession (with respect to all subsequent cases involving alleged preexisting mitochondrial disorders) of the first, "can cause" prong of the test set forth by the Federal Circuit in *Althen v. Sec'y of Health & Human Servs.*, 418 F.3d 1274 (Fed. Cir. 2005). Pet'rs' Mot. at 9. But their argument ignores a fundamental fact: *Poling* was settled, not adjudicated. As observed in *Moreland Corporation*, "judicial estoppel does not apply where a party *settles the claim* in which it is alleged to have made an inconsistent statement." 76 Fed. Cl. at 294 (emphasis added). The fact that a pleading generated *prior* to the *Poling* settlement contains what could be viewed as concessionary *in that* case does not convert settlement of that matter into a judicial determination on the merits of the theory that should bind Respondent herein.

The inapplicability of judicial estoppel when based upon a settled case flows from the second *Moreland Corporation* factor, which considers if there has been "judicial acceptance" of the purportedly inconsistent position. Where a party resolves his claim prior to its adjudication, there is no actual judicial determination on the merits.[12] Accordingly, the fact that a settling party later takes a position seemingly inconsistent to that taken in the settled case raises "no risk of inconsistent results, no effect on the integrity of the judicial process, and no perception that the court has been misled." *Water Technologies Corp. v. Calco, Ltd.*, 850 F.2d 660, 666 (Fed. Cir. 1988). Limiting application of the judicial estoppel doctrine in this manner is consistent with policies favoring settlement – for otherwise a court would be required to go "behind" a settlement and evaluate each side's grounds for accepting it, "in an attempt to reconstruct which positions merit judicial endorsement." *First Nationwide Bank v. United States*, 56 Fed. Cl. 438, 444 (2003).[13]

---

[11] In *Poling*, Respondent stated in her Rule 4(c) report that based on an initial review, the facts of that case met "the statutory criteria for demonstrating that the vaccination Hannah received on July 19, 2000, significantly aggravated an underlying mitochondrial disorder." *Poling*, 2008 WL 1883059, at *1. Petitioners in that case developed a fever within 48 hours of the vaccination. *Paluck v. Sec'y of Health & Human Servs.*, No. 07-889V, 2013 WL 2453747, at *54 (Fed. Cl. May 10, 2013) *rev'd on other grounds*, 113 Fed. Cl. 210 (2013). Within six days of the vaccination, she lost the ability to climb stairs, and four days after that she developed a macular rash. *Id*. Later she lost the ability to communicate. *Id*.

[12] While *Poling* did result in a decision entering judgment on behalf of the Petitioner, the language in that decision is merely that the Respondent "elect[ed] not to challenge petitioner's claim." Decision Awarding Damages at 2, July 21, 2010 (ECF No. 115). This cannot be conflated into either a concession of the theory writ large or a judicial determination that (in this particular case) the petitioners offered preponderant evidence in support of this part of their overall evidentiary burden.

[13] For the same reasons, Petitioners' argument that the doctrine of *res judicata* also supports their estoppel argument is similarly without merit. Petitioners cite in favor of this assertion *Nevada v. United States*, 463 U.S. 110 (1983). That case, however, held that *res judicata* requires, in part, "a final judgment . . . entered on the merits of a case." *Id*. at 135 (citing *Cromwell v. County of Sac*, 94 U.S. 351 (1876)) (emphasis added). A settlement, while "final," does not amount to a decision on the merits that has been fully and fairly litigated between the parties.

In addition to the above, there are other equally-compelling grounds for denying the Vernacchios' Motion. In particular, the Vernacchios erroneously assume an identity of interest with the *Poling* petitioners and their claim, based upon their common participation in the OAP and the related causation theories advanced in both actions. As noted above, however, the *Poling* petitioners asserted a Table Injury claim rather than the non-Table Injury claim at issue herein.[14] *Poling*, 2011 WL 678559. The *Poling* petitioners alleged that their child had suffered an acute encephalopathy that clearly constituted a Table Injury, and therefore were not bound to establish causation. By contrast, in this case Petitioners seek compensation based on a "non-Table Injury," and causation needs to be proved through the three *Althen* prongs. Furthermore, the two cases do not even concern the same vaccines. And even if *Poling* was initially designated as a potential representative test case, the OAP Petitioners' Steering Committee later determined that it should not be so designated, and it was not one of the final tried matters. *Poling* simply cannot be viewed, from a judicial standpoint, as equivalent to the present action for purposes of judicial estoppel.

The third *Moreland Corporation* factor is also unsatisfied herein. Because the *Poling* Petitioners never actually litigated their *Althen* prong one theory, it works no prejudice on the Vernacchios (or advantage to Respondent) to require Petitioners to prove it herein. In attempting to do so, the Petitioners are free to adopt arguments or borrow reasoning from litigated cases they believe are instructive (such as *Paluck*).[15]

At bottom, in exercising the discretion recognized by both the Federal Circuit and the Supreme Court (and keeping in mind that judicial estoppel exists to serve the interests of the tribunal rather than the litigants), I do not find that estopping Respondent in the manner requested by the Petitioners is warranted. The fact that Respondent settled a case analogous in certain ways (but not others) to the present claim, and in so doing made pre-settlement

---

[14] In the Vaccine Program, to receive compensation, a petitioner must prove either: (1) that he suffered a "Table Injury" – i.e., an injury falling within the Vaccine Injury Table – corresponding to one of the vaccinations in question, or (2) that her illnesses were actually caused by a vaccine (a "non-Table Injury"). See §§ 300aa 13(a)(1)(A),11(c)(1); § 300aa-14(a), as amended by 42 C.F.R. § 100.3; 300aa-11(c)(1)(C)(ii)(I); *see also Moberly v. Sec'y of Health & Human Servs.*, 592 F.3d 1315, 1321 (Fed. Cir. 2010); *Capizzano v. Sec'y of Health & Human Servs.*, 440 F.3d 1317, 1320 (Fed. Cir. 2006).

[15] *Paluck* is similarly distinguishable, and not solely because it involves different vaccines. Although *Paluck* was litigated, and (after two successful motions for review to the Court of Federal Claims) resulted in an entitlement award for the petitioner, the case is currently on appeal to the United States Court of Appeals for the Federal Circuit, and has not yet been decided. Until there is a Federal Circuit decision directing special masters to apply the law in an identified manner, or otherwise making a determination relevant to the validity of the causation theory asserted therein that is controlling as to the future decisions of special masters, *Paluck* is no more authority in this case than the decision of any other special master or Court of Federal Claims judge, no matter how well reasoned it may be. *Hanlon*, 40 Fed. Cl. at 630.

statements about the proof offered in that case, is not grounds for preventing Respondent from actually litigating the relevant causation theories. Those theories remain hotly disputed, and it would ultimately prejudice the judicial process by which Vaccine Act claims are resolved to find under these circumstances that they were already fully determined.

## CONCLUSION

Based upon my review of the Parties' briefs and their legal arguments, I **DENY** Petitioners' Motion for Judicial Estoppel against Respondent.

**IT IS SO ORDERED.**

                                                /s/ Brian H. Corcoran
                                                  Brian H. Corcoran
                                                  Special Master