# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 08-504V
(to be published)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

ROBERT VERNACCHIO and ERICA
VERNACCHIO, parents and natural guardians
of, L.V., a minor,

            Petitioners,

        v.

SECRETARY OF HEALTH AND
HUMAN SERVICES,

            Respondent.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Filed: April 10, 2015

*Robert Krakow*, Law Office of Robert J. Krakow, P.C., New York, NY, for Petitioners.

*Lynn Ricciardella*, U.S. Dep't of Justice, Washington, DC, for Respondent.

### ORDER DENYING PETITIONERS' MOTION FOR RECONSIDERATION[1]

On October 25, 2002, Robert and Erica Vernacchio, the parents and natural guardians of L.V., a minor, filed the above-captioned action in the National Vaccine Injury Compensation Program (the "Program").[2] Their subsequently-amended petition alleges that the influenza ("flu") vaccine that L.V. received on December 8, 2006, caused L.V. to develop a neurodevelopmental disorder and other medical conditions and symptoms. Amended Pet. at 3, dated April 9, 2012 (ECF No. 27). The matter is currently scheduled for hearing beginning April 13, 2015.

---

[1] Because this order contains a reasoned explanation for my action in this case, I will post this order on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2006)). As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the posted order's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen (14) days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole order will be available to the public. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended, 42 U.S.C. §§ 300aa-10 through 34 (2006) [hereinafter "Vaccine Act" or "the Act"]. Individual section references hereafter will be to § 300aa of the Act.

On January 5, 2015, the Vernacchios filed a Motion for Judicial Estoppel. In it, they argued that Respondent should be precluded at trial from adopting a factual position in defending against the claim that is contrary to the position that Petitioners allege Respondent adopted in a different Vaccine Program case, *Poling v. Sec'y of Health & Human Servs.*, No. 02-1466V, 2008 WL 1883059 (Fed. Cl. Spec. Mstr. Apr. 10, 2008) [hereinafter *Poling*]. Respondent conceded *Poling* and ultimately settled it.

After the matter was fully briefed, I issued an order denying Petitioners' Motion for Judicial Estoppel on March 6, 2015 (ECF No. 124) ("Estoppel Order"). As my order sets forth, I denied the motion because I determined that the Vernacchios had not established any basis (whether through the application of collateral or judicial estoppel) for preventing Respondent from litigating causation issues and theories similar to those that were advanced in *Poling*, even if Respondent conceded liability in that case. By motion dated April 4, 2015 (ECF No. 136) ("Reconsideration Mot."), Petitioners now request reconsideration of that order.

I.      **Legal Analysis of Reconsideration Motions**

Here, the Vernacchios challenge an "order" issued in the case rather than a "decision" involving a compensation determination. I find little direct guidance in the Vaccine Rules or case law from other Program petitions as to the standard of law to be applied to requests for reconsideration of a case order. Vaccine Rule 10(e), however, which governs motions for reconsideration of a special master's decision, has some utility in addressing the merits of the Vernacchios' motion. As that rule provides, "[e]ither party may file a motion for reconsideration of the special master's decision within 21 days after the issuance of the decision . . . ." Vaccine Rule 10(e)(1). Special masters have the discretion to grant a motion for reconsideration if to do so would be in the "interest of justice." Vaccine Rule 10(e)(3).

As noted by another special master, "there is a dearth of law interpreting Vaccine Rule 10(e)(3)," beyond the conclusion that, as the rule makes clear, it is within the special master's discretion to decide what the "interest of justice" is in a given case. *Krakow v. Sec'y of Health & Human Servs.*, No. 03-632V, 2010 WL 5572074, at *3 (Fed. Cl. Spec. Mstr. Jan. 10, 2011) (granting reconsideration of motion to dismiss case for failure to prosecute). Many decisions appear to assume that the standard for reconsideration is congruent with the "manifest injustice" standard utilized under Rule 59(a) of the Rules of the Court of Federal Claims[3], which has been defined to be unfairness that is "clearly apparent or obvious." *Amnex, Inc. v. United States*, 52 Fed. Cl. 555, 557 (2002); *see also Krakow*, 2010 WL 5572074, at *3-*5 (citations omitted). At bottom, the *Krakow* order suggests that the "interest of justice" standard is more lenient, placing

---

[3] RCFC 59(a) sets forth three possible bases for obtaining reconsideration of an order: (a) a change in controlling law; (b) the presence of previously unavailable evidence; or (c) manifest injustice. *System Fuels, Inc. v. United States*, 79 Fed. Cl. 182, 184 (2007).

2

importance on whether reconsideration would provide a Vaccine Act petitioner a full opportunity to prove their case. *Id.* at *5.

## II. Analysis of Petitioners' Motion

At the outset, I note that the eleventh-hour nature of the Vernacchios' motion for reconsideration is troubling. Not only has the motion been filed within ten days of trial, but also it would be facially untimely if Rule 10(e) applied, since it was interposed twenty-nine days after my March 6, 2015, Order denying the first estoppel motion. Too much of the past several months leading to trial has been devoted to consideration of Petitioners' estoppel arguments.

But even if I disregard its untimely character, I find that the reconsideration motion is substantively unpersuasive, as it relies not on new factual or legal developments but instead merely recasts arguments that were previously made (or could have been made).

As with their original estoppel motion, Petitioners' motion for reconsideration relies heavily on the fact that this case originally fell within the Omnibus Autism Proceeding ("OAP"), and thus overlapped with *Poling* for a period of time (along with thousands of other cases). Now, however, the Vernacchios maintain that there is a meaningful distinction between the "concession" of a legal or factual issue in a case and the act of settling a case in its entirety. Thus, the Vernacchios assert that because in the *Poling* case the Respondent (in her Rule 4(c) report, filed prior to that case's resolution) unilaterally **conceded** the evidentiary sufficiency of a medical theory that Petitioners wish to invoke in the present case (namely, that a vaccine can aggravate an underlying mitochondrial disorder and cause a regressive encephalopathy), that concession should be given estoppel effect herein despite the fact that Respondent subsequently *settled* the damages issues. Reconsideration Mot. at 3-4.

To support this argument, Petitioners specifically point to the July 21, 2010, and January 28, 2011, decisions in the *Poling* case (awarding damages and attorney's fees and costs, respectively). Petitioners note that "[n]either [d]ecision contained a report or suggestion that entitlement was discussed or negotiated by the parties," thus establishing that the concession was substantively different from a settlement produced as the result of give-and-take negotiations. Reconsideration Mot. at 4. Petitioners further argue that the special master in the *Poling* case took judicial notice of the concession set forth in Respondent's Rule 4(c) Report, relying upon it in her July 21, 2010, decision awarding damages. *Id.* Accordingly, Petitioners allege that the concession can be invoked to estop Respondent even if (as Petitioners seem to admit) a settlement is not similarly subject to judicial estoppel. *Id.* at 5.

The Vernacchios have also filed an affidavit from the attorney of record in the *Poling* case, Clifford Shoemaker, Esq. In it, Mr. Shoemaker avers that there were no discussions regarding the parties' respective positions on entitlement and damages in the period between Respondent's filing of her initial Rule 4(c) report in 2007 and the issuance of a decision

3

regarding damages in that case on July 21, 2010. Indeed, Mr. Shoemaker specifically states that he did not engage in settlement negotiations in the *Poling* case (nor was he aware that any such discussions or communications took place) until after the Court filed an order in November of 2007 confirming Respondent's earlier concession of the *Poling* petitioners' underlying theory. Affidavit of Clifford Shoemaker at ¶¶ 1-2 (ECF No. 136-2).

I do not find persuasive or well-reasoned the Vernacchios' argument that, under the circumstances of this case, a concession in a somewhat related matter leading to the settlement of that case should be given estoppel effect separate from the settlement of the same matter. As I stated in my original ruling denying their motion, for purposes of determining whether to apply judicial estoppel, one must start with an actual adjudicated matter – but "[w]here a party resolves his claim prior to its adjudication, there is no actual judicial determination on the merits." Estoppel Order at 7.[4] This was the case in *Poling* – even if Respondent determined therein that she would settle rather than litigate the matter, because she assessed that the legal standards governing a Program claim would likely be satisfied at a putative trial, *there was no trial and therefore no adjudication* – no court ever agreed with the merits of the *Poling* petitioners' medical theory. In effect, then, the settlement of *Poling* subsumed and erased the parties' reasons for settling it – and their pre-settlement assessments of the case's merits, even if disclosed in pleadings, cannot be converted into an adjudicated matter subject to judicial estoppel.

The Petitioners also continue to conflate *Poling* with the present case despite previously-discussed differences in the two cases' facts, parties, vaccines involved, and asserted theories. Estoppel Order at 3 nn.6 and 7. In particular, they too readily side-step the significant fact that *Poling* was settled based on Respondent's concession of a Table Injury – a Program claim in which causation is presumed, unlike the present case. *Id.* at 8 (citing *Poling v. Sec'y of Health & Human Servs.*, No. 02-1466V, 2011 WL 678559 (Fed. Cl. Spec. Mstr. Jan. 28, 2011)). Thus, in awarding compensation, the *Poling* special master made no judgment regarding the alternative, causation-in-fact theory referenced in Respondent's Rule 4(c) report. Even if at one point such a theory in support of a non-Table claim had been advanced, that theory was not the one asserted in the settled version of the *Poling* action.

As my original order indicated, courts are reasonably reluctant to judicially estop a party based on a settled case, because to do otherwise would require the court to go "behind" the settlement and investigate the parties' motives for settling so that the relevant court may evaluate the legal or factual soundness of a party's position. *First Nationwide Bank v. United States*, 56 Fed. Cl. 438, 444 (2003) ("[t]he court cannot go behind the settlement in an attempt to reconstruct which positions merit judicial endorsement"). Yet that is precisely what the present motion for reconsideration asks me to do. Thus, not only do the Vernacchios request that I order "an evidentiary hearing to explore the circumstances underlying the procedure by which the

---

[4] See also *United States v. International Bldg. Co.*, 345 U.S. 502, 506 (1953) (holding that a settlement does not constitute an adjudication of the merits, and to apply "the doctrine of estoppel by judgment would serve an unjust cause: it would become a device by which a decision not shown to be on the merits would forever foreclose inquiry into the merits [in the second case].").

*Poling* concession inexplicably metamorphosed after the Rule 4(c) filing" (Reconsideration Mot. at 9), but they offer an affidavit from the *Poling* case attorney himself, presumably to lay the groundwork for their ultimate argument regarding the scope and nature of Respondent's intentions in settling *Poling*.

All in all, I do not find that the interest of justice would be served by granting the reconsideration motion. Petitioners' argument is simply not well-founded, assiduously avoids grappling with the reasoning set forth in my original order, and ultimately makes no new or unexamined arguments requiring reconsideration. The Estoppel Order observed that judicial estoppel was ultimately a policy in service of the court rather than of individual litigants, and nothing in the motion for reconsideration establishes any reason to conclude that estopping Respondent in this case would serve such ends.

## CONCLUSION

For the aforementioned reasons, I hereby **DENY** Petitioners' Motion for Reconsideration or Rearguing of my March 6, 2015, Order denying their Motion for Judicial Estoppel.

**IT IS SO ORDERED.**

    s/Brian H. Corcoran
Brian H. Corcoran
Special Master